UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                    <u>For Online Publication Only</u>
----------------------------------------------------------------X
CRISTIAN SANDOVAL,

                Petitioner,

      -against-                                   **<u>MEMORANDUM AND ORDER</u>**
                                   14-CV-5187 (JMA)
WILLIAM LEE,

                Respondent.
----------------------------------------------------------------X

**APPEARANCES:**

FILED
CLERK

5/20/2016 3:27 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

Cristian Sandoval, <u>pro se</u>
*For Petitioner*

Cristin Connell, Andrea M. DiGregorio, and Alyson Gill
Assistant District Attorneys
Madeline Singas, District Attorney of Nassau County
262 Old Country Road
Mineola, NY 11501
*For Respondent*

**AZRACK, United States District Judge:**

      Cristian Sandoval ("Sandoval"), proceeding <u>pro se</u>, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After a jury trial in state court, Sandoval was convicted of first-degree manslaughter and criminal possession of a weapon. Sandoval was sentenced to twenty-five years of imprisonment for second-degree manslaughter and one year of imprisonment for the use of a weapon, plus five years of post-release supervision. He unsuccessfully sought post-conviction relief.

      In the pending petition, Sandoval asserts five grounds for habeas relief: (1) the trial court erroneously admitted evidence of gang membership and the uncharged crime of statutory rape; (2) Sandoval suffered prejudice from the alleged deficiencies of the Nassau County crime laboratory; (3) the trial court erroneously denied Sandoval's <u>Batson</u> challenge; (4) the cumulative

1

effect of various errors deprived Sandoval of a fair trial; and (5) New York's sentencing statutes are unconstitutional. For the following reasons, Sandoval's petition is DENIED in its entirety.

## I. BACKGROUND

The following facts are taken from the petition and the underlying record.[1] In light of Sandoval's conviction, the Court discusses the facts in the light most favorable to the verdict. Garbutt v. Conway, 668 F.3d 79, 80 (2d Cir. 2012) (per curiam).

## A. **The Trial**

According to the trial testimony, on August 7, 2009, at approximately 10:00 p.m., Jobani Reyes and Zachary Rosales were walking home when they passed Sandoval and a group of men. (Tr. 396, 398, 407–08.) Reyes testified that Sandoval called them "chevala," before flashing a knife and repeating, "la mara, la mara." (Tr. 398–401.) Reyes testified that as Sandoval flashed the knife, he made gang signs with his fingers. (Tr. 400–01.) Detective George Colby, of Nassau County Police Department's gang section, explained that "chevala" is a derogatory Spanish term meaning "kid," "punk," or "enemy." (Tr. 946–47, 952–53.) He also explained that "la mara" is the shortened version of "mara salvatrucha," the full name of the MS-13 gang. (Tr. 951–52.) He testified that MS-13 members would use "la mara" as a greeting, or—when involved in a fight or assault—they would announce "la mara" to victims and witnesses of their crimes to instill fear. (Tr. 951–52.)

Reyes testified that he and Rosales ran but were chased down. (Tr. 403–04.) They split up, and Rosales was caught by Sandoval and another individual, who would be named as Sandoval's co-defendant. (Tr. 403–04.) Sandoval repeatedly stabbed Rosales with a knife while

---

[1] "Tr." refers to the trial transcript, People v. Sandoval Trial Tr., May 11–13, 17–21, 24–27, 2010, ECF Nos. 9, 9-1, 9-2, and 9-3. "S." refers to the transcript for the sentencing proceedings, People v. Sandoval S. Tr., July 20, 2010, ECF No. 8-3.

the co-defendant beat Rosales with a belt buckle.  (Tr. 403–05, 410.)  During the attack, a van of

Rosales' friends drove by the scene, and Reyes heard the co-defendant say, "Vamanos, Lucky," or

"let's go, Lucky."  (Tr. 405, 417, 449, 552–54.)  Sandoval and the co-defendant then fled the scene.

(Tr. 433.)

At trial, the sole defense witness was Kristie Fuentes, Sandoval's fourteen-year-old ex-

girlfriend.  (Tr. 963–64, 966, 970–71.)  Fuentes testified that she saw Sandoval in front of his home

at 10:00 p.m. and that she stayed with him for twenty minutes, establishing Sandoval's alibi for

the murder.  (Tr. 965–66.)

Sandoval, who was seventeen years old at the time, was charged with second-degree

murder and two counts of criminal possession of a weapon in the fourth degree.  See N.Y. Penal

Law § 125.25(1); N.Y. Penal Law § 265.01(2).    The jury convicted him of first-degree

manslaughter, which had been submitted as a lesser offense, and one count of criminal possession

of a weapon.  See N.Y. Penal Law § 125.20(1).  He was sentenced to twenty-five years of

imprisonment for the manslaughter conviction and one year of imprisonment for the weapon

conviction, plus five years of post-release supervision.  (S. 21.)

## B. Post-Conviction Proceedings

### 1. The Direct Appeal

Sandoval, through counsel, appealed his conviction to the Second Department of the New

York Appellate Division.  On appeal, Sandoval argued: (1) the trial court erred by admitting

evidence of gang membership; (2) the prosecutor solicited prejudicial testimony that Sandoval

committed an uncharged crime of statutory rape; (3) the Nassau County crime laboratory

potentially made errors in its handling of evidence; (4) the cumulative effect of these errors and

others deprived Sandoval of a fair trial; and (5) the prosecutor violated the Supreme Court's

decision in <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), by exercising peremptory challenges in a racially discriminatory manner.[2] (<u>See</u> Def.'s App. Br., Apr. 14, 2011 ("App. Div. Br."), at 16–27, Ex.1, ECF No. 8-1; Def.'s <u>Pro Se</u> Suppl. Br., Ex. 4, ECF No. 8-1.)[3]

On November 28, 2012, the Second Department affirmed Sandoval's conviction. <u>People v. Sandoval</u>, 100 A.D.3d 1025, 1027–28 (N.Y. App. Div. 2d Dep't 2012). The court determined that three of Sandoval's claims were unpreserved for appellate review: (1) the trial court erred by admitting evidence that Sandoval committed the uncharged crime of statutory rape; (2) Sandoval suffered prejudice from the alleged deficiencies of the Nassau County crime laboratory; and (3) the trial court erred by denying Sandoval's <u>Batson</u> challenge. <u>Id.</u> at 1027. The court also found that the evidence involving gang references established motive and that "the cumulative effect of these alleged errors" did not deprive Sandoval of a fair trial. <u>Id.</u> at 1027–28. In a catchall provision, the court concluded that "[t]he defendant's remaining contentions are without merit." <u>Id.</u> at 1028.

On May 30, 2013, the New York Court of Appeals denied Sandoval's request for leave to appeal. <u>People v. Sandoval</u>, 21 N.Y.3d 946 (N.Y. 2013). Sandoval did not petition to the United States Supreme Court.

### 2. The Section 440.20 Motion

Sandoval then filed a motion under Section 440.20 of the New York Criminal Procedure Law. (<u>See</u> Def.'s Mot. to Vacate Sentence ("440.20 Mot."), June 17, 2014, Ex. 7, ECF No. 8-1.) Essentially, he contended that New York's sentencing statutes are unconstitutional because they "exclude 16 and 17 year olds as juveniles and subject[] them to adult punishment without taking into account youth and its attendant characteristics." (<u>Id.</u> at 133.) In December 2014, the County

---

[2] Sandoval raised the fifth argument in his <u>pro se</u> supplemental brief. (Def.'s <u>Pro Se</u> Suppl. Br., Ex. 4, ECF No. 8-1.)

[3] The Court uses the pagination assigned by the electronic case filing system.

Court of Nassau County denied this motion. (Court Order Denying Def.'s Mot. ("440.20 Ct. Order"), Dec. 31, 2014, at 157, Ex. 10, ECF No. 8-1.) It appears that Sandoval has yet to seek further state court relief on this issue.

### 3. The Instant Petition

Sandoval filed a petition for habeas relief on August 25, 2014. He asserts the following five claims, all of which have been raised in either his direct appeal or Section 440.20 motion: (1) the trial court incorrectly admitted evidence that Sandoval was a gang member and that Fuentes is the mother of Sandoval's child (the "evidentiary rulings claims"); (2) the Nassau County crime laboratory may have mishandled evidence (the "crime lab claim"); (3) the trial court failed to fulfill its obligations under Batson (the "Batson claim"); (4) Sandoval was deprived of a fair trial because the prosecutor made an improper remark during summations and because his defense counsel was ineffective (the "fair trial claims"); and (5) New York's sentencing statutes are unconstitutional, under both facial and as-applied challenges (the "sentencing claim"). (See Pet. at 1–12, ECF No. 1; see also App. Div. Br. at 16–27; 440.20 Mot. at 133.)

For the reasons discussed below, the Court denies Sandoval's petition in its entirety. The two grounds properly presented for review—part of the evidentiary rulings claims and the fair trial claims—are meritless. The remaining grounds are either unexhausted or procedurally barred. Moreover, even if the Court were to reach the merits of the barred claims, they too would fail.

## II. DISCUSSION

### A. <u>Standards of Review</u>

### 1. Overview of AEDPA

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas

corpus to state prisoners." Williams v. Taylor, 529 U.S. 362, 399 (2000) (O'Connor, J., concurring). Under AEDPA, a prisoner may file a habeas petition "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To make that showing, the petitioner must satisfy three hurdles: (1) the exhaustion of state remedies, (2) the absence of a procedural bar, and (3) the satisfaction of AEDPA's deferential review of state court decisions. See 28 U.S.C. § 2254.

### 2. Exhaustion

Generally, a court cannot review a habeas petition unless the petitioner "has exhausted the remedies available" in state courts. 28 U.S.C. § 2254(b)(1)(A). The purpose of this requirement is to provide state courts with the "'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Jackson v. Edwards, 404 F.3d 612, 619 (2d Cir. 2005) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). Therefore, petitioner must show that he fairly presented his federal claim to the highest state court from which a decision can be rendered. Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 190 n.3 (2d Cir. 1982) (en banc). Although the petitioner need not "'cite chapter and verse of the Constitution in order to satisfy this requirement,' he must tender his claim 'in terms that are likely to alert the state courts to the claim's federal nature.'" Jackson v. Conway, 763 F.3d 115, 133 (2d Cir. 2014) (quoting Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011)).

Where, as here, the petition is a "mixed petition," containing both exhausted and unexhausted claims, the Court may choose to deny the entire petition on the merits. See McCrae v. Artus, No. 10-CV-2988, 2012 WL 3800840, at *8 (E.D.N.Y. Sept. 2, 2012). Indeed, "[f]ederal courts retain the discretion to deny a petition including unexhausted claims on the merits when it deems those claims to be patently frivolous." Ortiz v. Marshall, No. 08-CV-8815, 2009 WL 3170300, at *7 (S.D.N.Y. Sept. 30, 2009).

### 3. Procedural Default

"It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." Cone v. Bell, 556 U.S. 449, 465 (2009). This procedural bar applies even if the state court addressed a claim's merits in the alternative but decides that claim on independent, procedural grounds. Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam); see also Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) (observing that "a state court need not fear reaching the merits of a federal claim in an alternative holding" where the court explicitly invokes a procedural rule as an independent ground for its decision). Furthermore, a claim is procedurally defaulted if the petitioner failed to exhaust his state remedies, and the state court would now find his claims procedurally barred. Reyes v. Keane, 118 F.3d 136, 140 (2d Cir. 1997) (citing Coleman v. Thompson, 501 U.S. 722, 735 (1991)); see also Lloyd v. Walker, 771 F. Supp. 570, 574 (E.D.N.Y. 1991) (noting that when unpresented claims are deemed exhausted, "a petitioner's forfeiture of his claims in state court by failing to present them to the proper court bars him from litigating the merits of those claims in federal habeas proceedings" unless he can overcome the procedural bar).

A petitioner may overcome the procedural bar by demonstrating either (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. To demonstrate cause, petitioner must establish that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule": for example, that the factual or legal basis for a claim was not reasonably available to counsel or that "some interference by officials . . . made compliance impracticable." Murray v. Carrier, 477 U.S. 478,

488 (1986) (internal quotation marks and citations omitted).  As for the prejudice requirement, the petitioner must demonstrate that counsel's errors not only "created a possibility of prejudice, but that they worked to his actual and substantial disadvantage . . . ."  Id. at 495–96 (internal quotation marks omitted) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

Alternatively, the Court may excuse a petitioner's procedural default if he can show that a fundamental miscarriage of justice would result, to wit, "that he is actually innocent of the crime for which he has been convicted."  Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995)).  To prevail, the petitioner must put forth "new reliable evidence . . . that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful."  Schlup, 513 U.S. at 324.

### 4. AEDPA Standard of Review

If a state court reached the merits of a claim, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.SC. § 2254(d).  The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to]' and 'unreasonable.'"  Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000).

A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring).  A decision involves "an unreasonable application" of clearly established federal law

when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. This standard does not require that all reasonable jurists agree that the state court was wrong. Id. at 409–10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Jones, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'" Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 132 S. Ct. 490, 491 (2011) (per curiam)). This standard is "'difficult to meet,'" and for good reason. White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quoting Metrish v. Lancaster, 133 S. Ct. 1781, 1786 (2013)), reh'g denied, 134 S. Ct. 2835 (2014). Section 2254(d), as amended by AEDPA, "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." Harrington v. Richter, 562 U.S. 86, 102 (2011). Thus, a petition must demonstrate that the "state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

Furthermore, a state court's determinations of factual issues are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006). A state court's findings of fact will be upheld "unless objectively unreasonable in light of the evidence presented in the state court proceeding." Lynn, 443 F.3d at 246–47 (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). Thus, a federal court may overrule a state court's

judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Williams, 529 U.S. at 389.

**5. <u>Pro Se</u> Status**

Sandoval "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997). But in light of his pro se status, the Court will construe his submissions liberally and interpret them "'to raise the strongest arguments that they suggest.'" Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). However, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)).

**B. <u>Claims for Relief</u>**

The Court will address each of Sandoval's claims: (1) the evidentiary rulings claims, (2) the crime lab claim, (3) the Batson claim, (4) the fair trial claims, and (5) the sentencing claim. Although part of the evidentiary ruling claim (regarding references to gang membership) and the fair trial claims are properly presented for review, these grounds are meritless. The evidentiary ruling claim regarding evidence of an uncharged crime, the crime lab claim, and the Batson claim are procedurally barred, and the sentencing claim is unexhausted. However, the Court has analyzed the merits of all of Sandoval's claims. As set forth below, the Court denies Sandoval's petition in its entirety on the merits.

**1. The Evidentiary Rulings Claims**

Sandoval contends that the trial court incorrectly admitted evidence (1) that Sandoval was a gang member and (2) that Fuentes is the mother of Sandoval's child. (Pet. at 5; <u>see also</u> App.

Div. Br. at 16–24.) The Supreme Court has been reluctant "to impose constitutional restraints on ordinary evidentiary rulings by state trial courts." Crane v. Kentucky, 476 U.S. 683, 689 (1986). In fact, a petitioner must show that the introduction of evidence was "so extremely unfair that its admission violate[d] 'fundamental conceptions of justice.'" Dowling v. United States, 493 U.S. 342, 352 (1990) (quoting United States v. Lovasco, 431 U.S. 783, 790 (1977)); accord Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985) (observing that evidence violates due process only when it is "sufficiently material to provide the basis for the conviction or to remove a reasonable doubt that would have existed on the record without it"). Moreover, even if the trial court incorrectly admitted evidence, habeas relief is not warranted if the error was harmless in light of the entire record. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

*i. References to Gang Membership*

Sandoval first argues that any references to gang membership were inadmissible as propensity evidence. Respondent argues that the Second Department's finding that "[t]he references to 'gangs' were relevant to the defendant's motive and intent in committing the homicide" was not a misapplication of clearly established federal law. People v. Sandoval, 100 A.D.3d 1025, 1027 (N.Y. App. Div. 2d Dep't 2012). The Court agrees with respondent.

Evidence of Sandoval's gang membership provides context to his motive to commit murder. See Washington v. Artuz, No. 07-CV-7769, 2013 WL 1285877, at *2, *13 (S.D.N.Y. Mar. 29, 2013) (finding that evidence of membership in rival gangs was "probative of [the petitioner's] motive for an otherwise inexplicable murder" because without that evidence, the record would indicate that a young man had been shot at random on the street (internal quotation marks omitted)); see also Shannon v. Artuz, 984 F. Supp. 807, 809–10 (S.D.N.Y. 1997) (affirming

the trial court's decision to permit testimony about the petitioner's gang membership because the evidence was "relevant to prove petitioner's motive for assisting in [a] murder" and also bolstered the prosecution's theory that the murder was "motivated by revenge and the [gang members'] desire to assert their dominance"). Here, Sandoval called Reyes and Rosales "chevala," which MS-13 gang members use to refer to outsiders and enemies. (Tr. 398–401, 946–47, 952–53.) Sandoval flashed a knife and made gang signs, while repeating "la mara, la mara," implicating membership in—and an attack on behalf of—the MS-13 gang. (Tr. 398–401, 951–52.) On this basis, the Court cannot find that the introduction of this evidence was "so extremely unfair" that it violated due process. Dowling, 493 U.S. at 352.

### ii. Evidence of the Uncharged Crime of Statutory Rape

Sandoval argues that evidence establishing an uncharged crime of statutory rape is extremely prejudicial. Fuentes, Sandoval's alibi witness, is fourteen years old and the mother of his child. (Tr. 963–64, 966, 970–71.) Sandoval's defense counsel introduced evidence of the alibi, but the prosecutor established their relationship for credibility purposes. Sandoval argues that because he was seventeen years old during the relevant time period, the State solicited evidence of statutory rape, an uncharged crime. Ultimately, the Second Department determined that this argument was unpreserved. Sandoval, 100 A.D.3d at 1027 (concluding that the "evidence that [Sandoval] had committed the uncharged crime of statutory rape by adducing testimony that the sole defense witness was the mother of his child . . . [is] unpreserved for appellate review").

Because the Second Department "expressly relied on a procedural default as an independent and adequate state ground," Sandoval's claim is procedurally barred from habeas corpus review. Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (quoting Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996)). Moreover, Sandoval cannot overcome this procedural bar because

he has failed to demonstrate cause or prejudice, and he has failed to show that a fundamental miscarriage of justice will result if these claims are not reviewed by a federal court. See Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Even if the Court reached the merits of the claim, Sandoval's argument would still fail. Under clearly established Supreme Court precedent, the admission of uncharged crimes does not violate a defendant's due process rights. See, e.g., John v. New York, No. 12-CV-1944, 2013 WL 6487384, at *1, *9 (S.D.N.Y. Nov. 25, 2013). It is, of course, "common-law tradition" to preclude the prosecution from offering evidence of the "defendant's prior trouble with law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime." Michelson v. United States, 335 U.S. 469, 475 (1948). Yet, the Supreme Court specifically left open the question of "whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime." Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991). Thus, Sandoval cannot demonstrate that "clearly established Federal law, as determined by the Supreme Court," provides that the admission of evidence of uncharged crimes violates a defendant's due process rights. 28 U.S.C. § 2254(d)(1).

### iii. Any Error from the Evidentiary Rulings Was Harmless Error

Furthermore, even if the trial court's rulings were incorrect, any error was harmless in light of the overwhelming evidence of Sandoval's guilt. A trial error is generally considered to be harmless if it did not have a "'substantial and injurious effect or influence in determining the jury's verdict.'" Brecht, 507 U.S. at 637 (quoting Kotteakos, 328 U.S. at 776). To make that finding, the Court must consider various factors, including the importance of the supposed error, the presence of corroborating evidence, and the strength of the prosecution's case. See Latine v. Mann,

25 F.3d 1162, 1167 (2d Cir. 1994), cert. denied, 514 U.S. 1006 (1995). The strength of the prosecution's case is "'probably the single most critical factor in determining whether error was harmless.'" Id. at 1167–68 (quoting United States v. Castano, 999 F.2d 615, 618 (2d Cir. 1993) (per curiam)).

Here, the prosecution's case was strong. Reyes was an eyewitness to the murder and testified that Sandoval repeatedly stabbed Rosales. (Tr. 410.) Three individuals also placed Sandoval at the crime scene, as did cell phone records. (See Tr. 554–55, 892–97, 918.) Moreover, at the crime scene, Reyes heard the co-defendant call Sandoval "Lucky," a nickname which various witnesses associated with Sandoval. (See, e.g., Tr. 569, 643, 645, 721–22, 730–31.) Thus, neither the introduction of the gang references nor Fuentes's maternal status could have had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Brecht, 507 U.S. at 637 (quoting Kotteakos, 328 U.S. at 776). The evidence was overwhelming, and Sandoval has not demonstrated that if the Court set aside the allegedly incorrect evidentiary rulings, the outcome of the trial would have been different. Thus, the Court finds that the Second Department's decision rejecting Sandoval's evidentiary rulings claims was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1).

### 2. The Crime Lab Claim

Next, Sandoval contends that the Nassau County crime laboratory may have mishandled evidence. (Pet. at 5; see also App. Div. Br. at 24–25.) Because the Second Department concluded that these contentions were "unpreserved for appellate review," People v. Sandoval, 100 A.D.3d 1025, 1027 (N.Y. App. Div. 2d Dep't 2012), they are procedurally barred. See Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005). Additionally, Sandoval cannot overcome this procedural

bar because he has failed to establish cause, any resulting prejudice, or a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Even if the Court reached the merits, Sandoval has not provided a basis as to why he is entitled to relief on this claim. See Smith v. Phillips, 455 U.S. 209, 221 (1982) (explaining that a writ of habeas corpus "reaches only convictions obtained in violation of some provision of the United States Constitution"). Nor did he offer any proof at trial that the Nassau County crime laboratory mishandled evidence. In fact, Sandoval concedes that "there was no reason [at the trial] for defense counsel to question the accuracy of the testimony" of a forensic geneticist, who worked for the laboratory at the Nassau County Medical Examiner's Office and tested certain evidence. (App. Div. Br. at 24; Tr. 692–93.) Thus, Sandoval has not presented a meritorious federal constitutional claim.

### 3. The **Batson** Claim

Sandoval also argues that a purported Batson error compels habeas relief. (Pet. at 8.) However, because the Second Department found that this argument was "unpreserved for appellate review," People v. Sandoval, 100 A.D.3d 1025, 1027 (N.Y. App. Div. 2d Dep't 2012), the Batson claim is procedurally barred. See Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005). In addition, Sandoval has not established cause, prejudice, or that he is actually innocent. Coleman v. Thompson, 501 U.S. 722, 735 (1991).

Even if the claim was not procedurally barred, Sandoval has not established that he is entitled to habeas relief. In Batson v. Kentucky, the Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race." 476 U.S. 79, 89 (1986). Courts weighing a Batson challenge follow a three-stage probe:

> A Batson objection may be lodged when a party perceives a pattern
> of discrimination in the use of peremptory strikes during the voir

> dire, so-called "step one" or the "prima facie case" of a <u>Batson</u>
> challenge. Step two requires that, upon a showing of a pattern of
> discrimination, the opposing party provide race neutral reasons for
> its peremptory strikes. Finally, step three returns the ball to the
> challenger, who must then show that the professed race neutral
> reasons were pretextual and prove racial discrimination was the real
> motive.

<u>Richardson v. Greene</u>, 497 F.3d 212, 214 (2d Cir. 2007) (citation omitted). Furthermore, the trial

judge does not have to "engage in 'a talismanic recitation of specific words in order to satisfy

<u>Batson</u>'" as long as he generally credits the non-moving party's race-neutral explanation. <u>Messiah</u>

<u>v. Duncan</u>, 435 F.3d 186, 198 (2d Cir. 2006) (quoting <u>Galarza v. Keane</u>, 252 F.3d 630, 640 n.10

(2d Cir. 2001)); <u>Reyes v. Greiner</u>, 340 F. Supp. 2d 245, 253 n.1 (E.D.N.Y. 2004). "As long as a

trial judge affords the parties a reasonable opportunity to make their respective records, he may

express his <u>Batson</u> ruling on the credibility of a proffered race-neutral explanation in the form of

a clear rejection or acceptance of a <u>Batson</u> challenge." <u>Messiah</u>, 435 F.3d at 198. Indeed, a high

degree of deference is given to a trial judge's determinations on such context-specific matters of

credibility. <u>See</u> <u>Hernandez v. New York</u>, 500 U.S. 352, 365 (1991).

Sandoval "bore the burden of articulating and developing the factual and legal grounds

supporting his <u>Batson</u> challenge before the trial court." <u>Overton v. Newton</u>, 295 F.3d 270, 279 (2d

Cir. 2002). However, he merely argued that the prosecutor preempted the "three minorities on the

jury panel." (Tr. 89.) Sandoval's defense counsel stated, flatly and without more, that at least two

of those jurors "clearly" indicated that they could be fair and impartial. (Tr. 90.) In response, the

prosecutor explained that she exercised her peremptory challenges because two of the jurors knew

individuals who were accused or convicted of crimes, a situation which led to a hung jury in the

prosecutor's last trial. (Tr. 90.) Although the trial court did not receive a race-neutral reason for

the third juror, the trial court determined that it did not find a pattern of discrimination "at [that]

point" but agreed to "consider it at a later point" as jury selection progressed. (Tr. 91.) Notably, defense counsel made the Batson challenge at the end of the first out of six rounds of jury selection. (Tr. 29, 92–93.)

Where, as here, the trial court's decision "hinged primarily on the fact that [a] Batson challenge was lodged relatively early in the jury selection process," the trial court did not act unreasonably by denying the Batson challenge. See Brown v. Alexander, 543 F.3d 94, 102 (2d Cir. 2008). While defense counsel referenced racial discrimination at the end of the first round of jury selection, this oblique reference, without more, does not satisfy petitioner's obligations under Batson. See United States v. Stavroulakis, 952 F.2d 686, 696 (2d Cir. 1992).

Sandoval's argument is further undermined by his failure to renew his Batson challenge later in the proceedings. As a result, the trial judge "never confronted, and the trial record does not reveal, what the statistics would have shown at the conclusion of jury selection." See Overton, 295 F.3d at 279. The trial transcript, moreover, indicates that Sandoval never made any statistical showing. Collins v. Beaver, No. 03-CV-0416, 2005 WL 1801603, at *6–7 (E.D.N.Y. July 27, 2005) (concluding that a state court reasonably rejected a Batson challenge when the application "did not include a complete picture of contrastable statistics and were made midway in the process" (internal quotation marks omitted)). Thus, even if Sandoval's Batson claim was not procedurally barred, he is still not entitled to habeas corpus relief. See Rodriguez v. Greiner, No. 01-CV-2161, 2004 WL 2781720, at *7 (S.D.N.Y. Dec. 3, 2004) ("The inadequacy of the record was only magnified by petitioner's failure to renew his claim at the completion of jury selection.").

The Second Department's alternative ruling on the merits does not save Sandoval's argument. See Sandoval, 100 A.D.3d at 1027 ("In any event, the defendant's Batson challenges

were properly denied because the defendant failed to meet his burden of demonstrating a prima facie case of discrimination . . . .").  As the Second Circuit made clear, "federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default." Murden v. Artuz, 497 F.3d 178, 191 (2d Cir. 2007) (citing Green, 414 F.3d at 294).  In other words, a state court's "contingent observation" does not morph into an "adjudication on the merits" for purposes of habeas review.  Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (internal quotation marks omitted).

### 4. The Fair Trial Claims

Sandoval also claims that he was deprived of a fair trial because of (1) a remark made by the prosecutor during summations and (2) ineffective assistance of his defense counsel.  (Pet. at 8.)  The Second Department dismissed both claims on the merits.  People v. Sandoval, 100 A.D.3d 1025, 1027–28 (N.Y. App. Div. 2d Dep't 2012).

#### i. Prosecutorial Misconduct

First, Sandoval alleges that certain statements made by the prosecutor denied him his due process rights under the Fifth Amendment to the United States Constitution.  Sandoval's lawyer elicited testimony that Fuentes spoke with Sandoval on the phone on the night of the murder.  (Tr. 965.)  His lawyer did not, however, ask Fuentes for her phone number to substantiate this story with phone records.  (Tr. 1103.)  The prosecutor, in turn, made the following statements during summations: "Why is it that [Fuentes] didn't tell us what her phone number was to corroborate with the phone records.  Is that because it doesn't appear, because she, ladies and gentlemen, is the only interested witness in this case."  (Tr. 1061.)  The Second Department found that the prosecutor's summation remarks were a "fair comment on the evidence" and did not deprive Sandoval of a fair trial.  Sandoval, 100 A.D.3d at 1027–28.

As the Supreme Court made clear, "[r]emarks of the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'" United States v. Shareef, 190 F.3d 71, 78 (2d Cir. 1999) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974)). As a result, a petitioner must demonstrate that the alleged misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Parker v. Matthews, 132 S. Ct. 2148, 2153 (2012) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)). To determine whether the alleged misconduct requires relief, the Court employs an all-things-considered standard, reviewing the severity of the prosecutorial misconduct, any curative measures taken by the court, and the certainty of conviction without the prosecutor's comments. See, e.g., United States v. Melendez, 57 F.3d 238, 241 (2d Cir. 1995); Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994).

The overwhelming evidence of Sandoval's guilt confirms that he was not prejudiced by the prosecutor's remarks. See Bentley, 41 F.3d at 825 (rejecting a prosecutorial misconduct argument where there was "compelling evidence in the prosecution's case . . . [and] the prosecutor's summation comments were both brief and isolated"). Moreover, the trial court issued a curative instruction to the jury on the supposed misconduct. (Tr. 1114 ("[T]here is nothing in evidence as to what [Fuentes's] phone number is. I am going to instruct you to disregard the remarks made by the prosecutor in her summation as to Kristie Fuentes's phone number.").) And courts must "presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it." Greer v. Miller, 483 U.S. 756, 766 n.8 (1987). Because Sandoval has not offered any proof to override this presumption, the Court must find that the jury followed the trial court's instructions.

Sandoval claims he had ineffective assistance of counsel because, inter alia, his attorney failed to object to the trial court's "failures to . . . require race neutral reasons and . . . conduct step three of <u>Batson</u>." (Pet. at 8.) Under the decision's catchall provision, concluding that all remaining claims were without merit, the Second Department dismissed Sandoval's ineffective assistance of counsel claim on the merits. <u>Sandoval</u>, 100 A.D.3d at 1028.

AEDPA requires federal courts engaging in habeas review to grant state courts substantial "deference and latitude" when considering an ineffective assistance of counsel claim. <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011). Federal review of a state court's rejection of an ineffective assistance of counsel claim is "doubly deferential." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123–24 (2009).

Sandoval bears the burden to demonstrate that his defense counsel's performance was so inadequate as to violate his right to assistance of counsel under the Sixth Amendment to the United States Constitution. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 696 (1984). To prevail, he must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms;' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." <u>United States v. Cohen</u>, 427 F.3d 164, 167 (2d Cir. 2005) (quoting <u>Strickland</u>, 466 U.S. at 688).

Under the first prong, the Court "must indulge a strong presumption that the counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689. In evaluating counsel's effectiveness, the Court must keep in mind that "'[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight.'" <u>Greiner v. Wells</u>, 417 F.3d 305, 319 (2d Cir. 2005) (quoting <u>Rompilla v.</u>

Beard, 545 U.S. 374, 389 (2005)).  Thus, the record must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Wilson v. Mazzuca, 570 F.3d 490, 502 (2d Cir. 2009) (quoting Strickland, 466 U.S. at 687).  Where, as here, counsel was sufficient, the inquiry ends, and the Court need not address the prejudice component.  Strickland, 466 U.S. at 697.

Faced with an uphill battle, Sandoval's defense counsel mounted a vigorous defense, presenting evidence of the police's inadequate investigation, an alibi witness, and the absence of DNA evidence.  (See, e.g., Tr. 965–66, 985–86, 1008.)  To cite other examples, counsel used cross-examination to challenge a detective's credentials on cell phone records, to elicit testimony that "Lucky" is a common nickname, and to emphasize that the police had "tips" that other individuals were the actual perpetrators.  (Tr. 727, 813–15, 925–39.)  Throughout the trial, he also moved to exclude evidence of gang affiliation and witness testimony that Sandoval hated Rosales.  (Tr. 4–6, 563–65, 689–91.)  At the sentencing hearing, he moved to set aside the verdict and made a plea for lenity.  (S. 3–4, 14–17.)  Based on his efforts, the jury acquitted Sandoval of second-degree murder and a second count of criminal possession of a weapon in the fourth degree.  (Tr. 1127.)

The Batson claim does not change this outcome.  Defense counsel made three successful Batson challenges.  (Tr. 199–202.)  Counsel also lodged Batson claims for three other prospective jurors but was ultimately unsuccessful.  (Tr. 89–91.)  Although counsel did not reassert these claims later on, he is entitled to make a strategic decision not to do so.  See Tippins v. Walker, 77 F.3d 682, 686 (2d Cir. 1996) ("[I]n case after case, [the Second Circuit has] declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox, or downright ill-advised.").

Nor did defense counsel's omission of Fuentes's phone number constitute ineffective assistance of counsel. Defense counsel is permitted to make "some mistakes" as long as conduct was not "'so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Quinones v. Miller, 224 F. App'x 44, 51 (2d Cir. 2007) (quoting Strickland, 466 U.S. at 687). In the context of summations, the omission was minor, and the Court ultimately issued a curative instruction to the jury. Thus, Sandoval has failed to show that "counsel's errors were so serious as to deprive [him] of a fair trial." See Strickland, 466 U.S. at 687.

### 5. The Sentencing Claim

Sandoval argues that "New York['']s exclusion of its 16 and 17 year olds from juvenile-status and punishment is unconstitutional." (Pet. at 9.) In his Section 440.20 motion, he also argued that New York's sentencing statutes violate the Eighth Amendment to the United States Constitution because they "exclude 16 and 17 year olds as juveniles and subject[] them to adult punishment without taking into account youth and its attendant characteristics." (440.20 Mot. at 133.) Sandoval's Section 440.20 motion was denied on December 31, 2014, and he has yet to seek further state court review of this claim. (See 440.20 Ct. Order at 157.) Consequently, Sandoval has not fairly presented his claim to the highest state court from which a decision can be rendered, and thus he has not exhausted his state remedies on his sentencing claim. See Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 190 n.3 (2d Cir. 1982) (en banc).

As discussed supra, courts may deny a habeas corpus petition on the merits even if the petitioner failed to exhaust certain claims in state courts. 28 U.S.C. § 2254(b)(2). In fact, dismissal on the merits is appropriate where the claim is "plainly meritless" or "patently frivolous." Williams v. Artus, 691 F. Supp. 2d 515, 526 (S.D.N.Y. 2010); Robinson v. Phillips, No. 04-CV-3446, 2009 WL 3459479, at *1 (E.D.N.Y. Oct. 23, 2009). That is the case here. Sandoval has

failed to establish that New York's sentencing statutes violate the Eighth Amendment, in either a facial or an as-applied challenge.

In support of his argument, Sandoval relies on <u>Miller v. Alabama</u>, 132 S. Ct. 2455 (2012), and <u>Graham v. Florida</u>, 560 U.S. 48 (2010), but those cases do not offer any reprieve. In <u>Miller</u>, the Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." 132 S. Ct. at 2469. Here, New York's sentencing statutes do not mandate life in prison. <u>See</u> N.Y. Penal Law § 70.02(3)(a) (stating that the term for a class B felony "must not exceed twenty-five years"); <u>see also</u> New York Penal Law § 125.20 ("Manslaughter in the first degree is a class B felony."). Moreover, the <u>Graham</u> Court made clear that "[a] State is not required to guarantee eventual freedom" but must provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." 560 U.S. at 75. That is exactly what New York's sentencing statutes do. Based on statutory "good time" credit provisions, Sandoval is eligible for a conditional release. <u>See</u> N.Y. Correction Law § 803(1)(a) & (c).

Construing Sandoval's arguments broadly, he also fails to provide that New York's sentencing statutes violate the Eighth Amendment as applied to him. In assessing this as-applied challenge, the Court may consider the nature of the offense and the characteristics of the defendant. <u>See</u> <u>id.</u> at 872–73; <u>see also</u> <u>Miller</u>, 132 S. Ct. at 2467–68. Here, the jury convicted Sandoval based on the evidence that he repeatedly stabbed Rosales, ultimately leading to the victim's death. The trial court then determined that Sandoval should receive twenty-five years—the maximum sentence for the crime of manslaughter. <u>See</u> New York Penal Law § 70.02(3)(a). That punishment comports with the jury's verdict. <u>See</u> <u>People v. Aponte</u>, 981 N.Y.S.2d 902, 906 (N.Y. Sup. Ct., Bronx Cnty. 2013) (upholding a seventeen-year-old defendant's sentence of twenty-five years to

life imprisonment for a murder conviction, in part, for "the havoc he wreaked" and "the brutality he savagely inflicted on others").

Thus, even if the Court reached the merits of this unexhausted claim, it is plainly meritless. Therefore, Sandoval is not entitled to habeas relief.

## III. CONCLUSION

Because the Court has considered all of Sandoval's arguments and found them meritless, the petition is DENIED. A certificate of appealability shall not issue because Sandoval has not made a substantial showing that he was denied a constitutional right. See 28 U.S.C. § 2253(c)(2). I certify that any appeal of this Order would not be taken in good faith, and thus in forma pauperis status is denied for the purposes of any appeal. Coppedge v. United States, 369 U.S. 438, 444–45 (1962). The Clerk of the Court is respectfully directed to serve notice of entry of this Order on all parties and to close the case.

**SO ORDERED.**

Dated: May 20, 2016
Central Islip, New York

_____/s/_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE